IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:22CR328-1 |
| | : | |
| CHESTER FLETCHER WALLACE | : | |

**GOVERNMENT'S TRIAL BRIEF**

NOW COMES the United States of America, by and through Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, Nicole DuPré and Tanner Kroeger, Assistant United States Attorneys, and files this consolidated trial brief, which also includes the government's motions *in limine* and Rule 404(b) notice for the Court's consideration, and states the following in support thereof:

## I.   **ANTICIPATED EVIDENCE**

In January 2022, Investigator (Inv.) Richard Armstrong with the Durham Police Department (DPD), learned that a woman, Female-1, had reported that Chester Wallace (Wallace) was a "pimp" and forced her to have sex with him as well as multiple other men on several occasions. She reported that she had previously been in a relationship with Wallace, however she no longer wanted to be with him and that she was reporting him for human trafficking.

Inv. Armstrong began an investigation into Female-1's claims and identified a second person, Female-2, who had previously reported Wallace for prostituting her out of his home at 614 Middle Street in Durham. Female-2 had further reported that Wallace supplied drugs to the women he held in sexual servitude, and she provided nicknames for some of the women Wallace held at 614 Middle Street.

Inv. Armstrong then viewed body worn camera footage from a DPD response to a 911 call at 614 Middle Street on January 27, 2022. The footage showed at least three women in the house with Wallace at 614 Middle Street. At that time, Wallace told the responding DPD officer that he merely rented beds—only to women—for $25 a day. During the footage, Inv. Armstrong saw a padlocked clasp on the exterior of one of the bedroom doors and unique artwork[1] on the walls.

That same month, an anonymous tip came through Crimestoppers that reported Wallace was "running girls and selling drugs." The tipster reported that Wallace kept "girls" at 614 Middle Street and made them stay there. The tipster further reported that Wallace "recruits girls from other towns and forces them to come back to Durham." The tipster also alleged Wallace used to

---

[1] Throughout the investigation, Inv. Armstrong saw the same artwork in photos posted on multiple escort advertisements. This indicated to him that the photos for the advertisements were taken inside 614 Middle Street.

"run the girls out of the Hometown Studios in Durham," but now uses the 614 Middle Street address. The following month, Inv. Armstrong reviewed a second Crimestoppers tip that he believed to be from the same individual. The tipster named women, including Female-1, who lived with Wallace at the time. The tipster further said they saw Wallace, acting as a "pimp," watching women as they "work."

On March 9, 2022, Inv. Armstrong interviewed Female-2 in person. Female-2 said Wallace held her against her will. She further reported Wallace both physically restrained and assaulted her. She said Wallace listed online advertisements to "pimp" her out for sex. She further explained Wallace would give her drugs and take the majority of the money she was paid for commercial sex prior to her escape in December 2021. Female-2 also gave her phone to Inv. Armstrong. She identified Wallace's phone number and showed text messages from Wallace discussing her "quick visit"[2] and demanding to know where she was. Female-2 explained that she received payments from clients via CashApp and then she would pay Wallace using the same application. Inv. Armstrong searched escort sites using both Female-2 and Wallace's number and found advertisements under both numbers. Inv. Armstrong further found that

[2] "Quick visit" is a commonly used term in commercial sex that means the customer only has 15 minutes with the sex worker.

between November 30, 2021, and December 16, 2021, Female-2 gave the address of 614 Middle Street when setting up appointments for commercial sex. Wallace's number was listed on ads for multiple women, including Female-1. Inv. Armstrong continued to search for escort ads throughout the investigation and repeatedly found advertisements for women associated with the case.

On March 29, 2022, Inv. Armstrong found an escort ad for Female-1 listing her "in-call" location as Durham. Largely based on the foregoing facts, Inv. Armstrong applied for and obtained a search warrant for Wallace's residence at 614 Middle Street the same day. During the execution of the search warrant, DPD officers located Wallace and three adult women, Leslie Chevonne Stout,[3] Victim 2, and Victim 5 in the home at 614 Middle Street. Once Wallace was arrested all three women told law enforcement that Wallace had used violence and intimidation to coerce them into committing commercial sex acts. Victims 2 and 5 later admitted Stout had participated in the violence and often acted as Wallace's "right-hand man."

---

[3] Stout is charged as Wallace's co-conspirator in Count One of the Indictment. *See* Docket No.1. Stout is also charged with Wallace in three additional counts, Counts Three, Four, and Five. *Id*.

## II. ELEMENTS OF THE OFFENSE AND EVIDENTIARY ISSUES

Based upon the forgoing anticipated evidence, the government has identified the following evidentiary and trial issues.

### a. Offense elements

The grand jury charged the defendant in a six-count Indictment with one count of conspiracy to commit sex trafficking in violation of Title 18, United States Code, Sections 1591(a)(1) and 1594(c), and five counts[4] of sex trafficking by force, fraud, or coercion in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1). *See* Docket [Dkt.] No. 1.

All counts of the Indictment involve Title 18, United States Code, Sections 1591(a)(1) and (b)(1). For the jury to convict Wallace of Count One of the Indictment, the jury must find beyond a reasonable doubt that the government has proved that Wallace *conspired* with at least one other person to commit sex trafficking in violation of § 1591(a)(1). For Counts Two through Six, the government must prove the defendant committed sex trafficking of each of the named victims in violation of § 1591(a)(1):

> **First**, That the Defendant recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person

---

[4] Each count is attributable to a separate victim.

5

**Second**, That the Defendant did so in or affecting interstate or foreign commerce; and

**Third**, That the Defendant knew or recklessly disregarded the fact, that means of force, threats of force, fraud, coercion or any combination of such means would be used to cause the person to engage in commercial sex acts.

Eric Wm. Ruschky, Pattern Jury Instructions for federal Criminal Cases, District of South Carolina § 1591(a)(1) (2020 Online Edition).

   b. <u>The government intends to call two expert witnesses.</u>

On May 1, 2023, the government provided written notice of its intent to call two expert witnesses pursuant to Fed. R. Evid. 702. Specifically, the government has noticed (1) Dr. Sharon Cooper, a medical doctor and expert in the dynamics of human trafficking (*see* Dkt. No. 40) and (2) Dr. John H. Burton, a medical doctor who specializes in addiction, specifically opioid addiction. (*see* Dkt. No. 41). For the reasons explained more fully in each notice, each of these witnesses possesses scientific, technical, or other specialized knowledge that will help the jury understand evidence and determine facts in issue. *See* Fed. R. Evid. 702(a). Their testimony will be based on sufficient facts and data and will be the product of reliable principles and methods. *See* Fed. R. Evid. 702(b) and 702(c). Finally, each witness has reliably applied these principles and methods to the facts of this case. *See* Fed. R. Evid. 702(d). As such, their relevant testimony is admissible under Fed. R. Evid. 702.

6

c. Notice of government's intent to introduce evidence of defendant's prior conviction under Fed. R. Evid. 404(b).

The government gives notice that it may seek to admit the factual circumstances underling Wallace's felony conviction under North Carolina law for Felonious Restraint. The victim in that 2017 case is also a victim in this case, Victim 5, named in Count Six of the Indictment. Dkt. No. 1.

Rule 404(b) is a rule of inclusion and, as such, admits all evidence of other crimes or acts "except that which tends to prove only criminal disposition." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted). Moreover, a district court has great discretion to admit evidence under Rule 404(b). *See, e.g.*, *id.* (holding that such rulings must stand unless "arbitrary or irrational"). The balancing test for the admission of prior acts under Rule 404(b) is longstanding and straightforward in this Circuit:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

7

*United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

All four *Queen* factors are satisfied here. In the instant case, evidence related to Wallace's prior felonious restraint of Victim 5 is admissible under Rule 404(b) because it is necessary to show, among other things, identification, knowledge, intent, plan, modus operandi, and absence of mistake.

The evidence related to Wallace's 2017 conviction is relevant to the elements charged in the instant offense – *i.e.*, that Wallace (i) recruited, enticed, harbored, transported, provided, obtained, or maintained a person, by any means (ii) that he did so in interstate commerce, and (iii) that he knew or acted in reckless disregard of the fact that force, fraud, or coercion were used to cause the person to engage in a commercial sex act. Thus, evidence of Wallace's prior conviction is relevant and probative on necessary elements the government must prove at trial. Moreover, because the evidence of Wallace's prior arrest is similar to the facts of the instant offense, the probative value is that much greater.

In both incidents, Wallace is alleged to have used violence, namely, hitting, dragging, and choking the *same victim*. In the 2017 incident, Wallace was found holding the victim's identification card, social security card, and money. Moreover, the victim was visibly injured and bleeding when law enforcement encountered her with Wallace. Thus, the underlying facts of the

8

2017 incident show Wallace's plan, intent, knowledge, *modus operandi*, and absence of mistake. Indeed, the facts show that Wallace' modus operandi is to use violence as a means of controlling and coercing Victim 5. Moreover, the highly probative value of this evidence substantially outweighs any prejudice the defendant may face by the admission of such evidence. To be sure, the facts from Wallace's prior conviction are prejudicial, but not so much as to substantially outweigh the probative value.

      d. <u>Should the defendant testify, the government will seek to admit evidence pursuant to Fed. R. Evid. 609.</u>

If the government does not put on the 404(b) evidence outlined above in its case-in-chief, the government will seek to admit the fact of Wallace's prior felony convictions as impeachment evidence pursuant to Federal Rule of Evidence 609 should Wallace elect to testify at trial. Specifically, the government will move to impeach Wallace with his 2017 felony conviction under North Carolina law for Felonious Restraint. As previously mentioned, the victim in that 2017 case is also a victim in this case, Victim 5, named in Count Six of the Indictment. *See* Dkt. No. 1. This conviction and the police reports related to the underlying incident have been previously turned over to the defendant in discovery.

Case 1:22-cr-00328-CCE   Document 56   Filed 06/21/23   Page 9 of 28

e. <u>Any evidence and/or arguments about defendant's health, finances, education, state proceedings, or potential punishment are inadmissible and improper.</u>

This Court should exclude any evidence or arguments referring to the defendant's health, finances, education, state proceedings, or potential punishment as such evidence would be irrelevant under Rule 403 and serve to confuse the issue and/or mislead the jury. Fed. R. Evid 402 provides that "evidence which is not relevant is not admissible." Moreover, Rule 403 provides that even relevant evidence may be inadmissible if its "probative value is substantially outweighed by the danger of unfair prejudice." *See* Fed. R. Evid 403.

In light of Rules of Evidence 401 and 403, the United States requests that the Court prohibit Wallace from presenting questions, testimony, evidence, and/or arguments before the jury dealing with the defendant's health, finances, education, state proceedings, or potential punishment. While such information may be relevant at sentencing, at trial the above information does not have any probative value and is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury. Indeed, the only purpose of such evidence would be to improperly appeal to the jury's emotions. Consequently, the defendant should be barred from presenting this information to the jury.

10

f. <u>The defendant should be precluded from challenging the legality of the search warrant at trial.</u>

The government anticipates the defendant may attempt to challenge the search warrant. This Court has heard arguments from both defense counsel and the defendant himself on this issue at multiple hearings. *See* Minute Entry February 8, 2023; February 16, 2023; February 28, 2023; May 17, 2023. At each juncture, this Court denied the defendant's requests for a *Franks* hearing and found the warrant contained sufficient probable cause. Thus, any Fourth Amendment issues have been decided and the defendant should be precluded from further challenging the legality of the search warrant. Such issues would be irrelevant and only serve to confuse the jury. *See* Fed. R. Evid. 401, 402, and 403.

g. <u>The defendant should be precluded from arguing entrapment.</u>

In pre-trial hearings, Wallace has made various references to the defense of entrapment and/or the public authority defense. *See* Dkt. No. 42. Entrapment is an affirmative defense and has two parts, "government inducement of the crime and a lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. Hackley*, 662 F.3d 671, 681 (4th Cir. 2011) (quoting *Matthews v. United States*, 485 U.S. 58, 63 (1988)). While the district court is the gatekeeper, if the defendant does not

11

produce "more than a scintilla of evidence of entrapment," the court need not give that instruction. *Id.* (quoting *United States v. Phan*, 121 F.3d 149, 154 (4th Cir. 1994)). Thus far, Wallace has not put forth a "scintilla of evidence" and thus the Court should preclude Wallace from arguing entrapment to the jury. *See also United States v. Smith*, 54 F. 4th 755, 774-75 (4th Cir. 2022).

Moreover, because Wallace has not given written notice of any public authority defense, the Court should preclude the defendant from eliciting any testimony or making any arguments related to a public authority defense. *See* Fed. R. Crim. P. 12.3; *see also United States v. Fulcher*, 250 F.3d 244, 253-55 (4th Cir. 2001).

h. <u>The government intends to introduce certain evidence of the defendant's statements.</u>

The government anticipates introducing certain statements of the defendant, both oral statements and text messages, to co-conspirators, victims, fellow inmates, and law enforcement. The defendant's statements are both admissible under Fed. R. Evid. 801(d)(2) and relevant under Fed. R. Evid. 403. Moreover, certain statements by others made in the course of conversations with the defendant are admissible as outlined below.

12

i. <u>Text messages attributable to the defendant are admissible</u>.

The government intends to offer as evidence phone data (both text messages and call logs) that were extracted via Cellebrite from the defendant's phone, co-defendant Stout's phone[5], as well as data from Victim 2, Victim 3, and Victim 5. Testimony regarding the extraction of phone data using Cellebrite does not require an expert and is thus admissible without regard to Fed. R. Evid. 702. *See United States v. Chavez-Lopez,* 767 F. App'x 431 (4th Cir. 2019) (unpublished). Moreover, statements made in text messages that are attributed to Wallace are admissible pursuant to Federal Rule of Evidence 801(d)(2)(A), admissions by a party-opponent.

Additionally, statements contained within the text messages that were made by the others in this case should also be admitted. These statements by others contained within the context of the text messages are not offered for the truth of the matter asserted, are not hearsay, and therefore admissible. *United States v. McDowell*, 918 F.2d 1004, 1007-08 (1st Cir. 1990). Additionally, the statements may be properly admitted along with the admissions of the defendant in order to "provide context [to the jury.]" *United States v. Gordon*, 754 F. App'x 171, 178-79 (4th Cir. 2018) (unpublished) (citing *United States v.*

---

[5] Stout's statements, as a co-conspirator, would be admissible if they are in furtherance of the conspiracy as discussed below at page 17.

13

*Leake*, 642 F.2d 715, 720 n.6 (4th Cir. 1981); *McDowell*, 918 F.2d at 1007-08

("Nor can a defendant, having made admission, keep from the jury other

segments of the discussion reasonably required to place those admissions into

context."). Such other parts of the conversations may be properly admitted as

"reciprocal and integrated utterance(s)," *United States v. Metcalf*, 430 F.2d

1197, 1199 (8th Cir. 1970), to put the defendant's statements into perspective

and make them "intelligible to the jury and recognizable as admissions."

*United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973).

> ii. <u>Post-*Miranda* statements the defendant made to law
> enforcement</u>.

The government may introduce evidence that the defendant gave a

voluntary, post-*Miranda* interview to Inv. Armstrong when he was arrested on

the instant charge. This evidence is both admissible under Fed. R. Evid.

801(d)(2) and relevant under Fed. R. Evid. 403. The defendant's statements

qualify as admissions by a party opponent and thus are not considered hearsay

under Fed. R. Evid. 801(d)(2). The statements are being offered by the

government. To date, the defendant has not filed a motion to suppress these

statements.

14

### iii. Defendant's statements to another inmate.

The government intends to introduce in its case-in-chief admissions and statements made by the defendant to another incarcerated individual. This individual was housed at the same jail as the defendant for a period of time while the instant case has been pending. The government anticipates calling this witness to the stand. Specifically, the government anticipates that this witness will testify that the defendant admitted to working with "Star (Leslie)" to "pimp white bitches" in Durham. He will also testify that Wallace told him the about a time he took one of the victims in this case to the woods, "slapped her around a bit, snatched all her clothes off, and tied her to a tree….[he] got in her face and said 'bitch you can sale[sic] your ass for me or die tied to this tree.' " As discussed above, the defendant's statements are non-hearsay admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2). The statements are also highly relevant to the offense charged as they are admissions of each of the elements of the offenses charged. Indeed, it is hard to imagine evidence with a higher probative value. While these statements are prejudicial, all relevant evidence presented by the government in a case such as this will likely be prejudicial against the defendant. The probative value of these admissions by the defendant supports their admissibility.

Case 1:22-cr-00328-CCE   Document 56   Filed 06/21/23   Page 15 of 28

iv. Self-serving testimony offered by the defendant is inadmissible and should be precluded.

Wallace should be precluded from introducing his own statements through the testimony of another witness, through prior court pleadings and/or filings, or other information written by him. Any such attempt would be impermissible because those statements are hearsay. While the government may use the statements of a defendant against him under Federal Rule of Evidence 801(d)(2) (admission by party-opponent), this rule may not be relied upon by the Wallace because he is not the proponent of the evidence, and the evidence is not being offered against him (but rather on his behalf). The Federal Rules of Evidence do not provide an exception for self-serving, exculpatory made by a party which are being sought for admission by the same party. *See United States v. Wilkerson*, 84 F.3d. 692, 696 (4th Cir. 1996). Defendant cannot present "self-serving hearsay" to the jury without the benefit of cross-examination by the United States.

Nor can Defendant rely on Rule 801(d)(1)(B), which provides that a statement is not hearsay if:

> The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . .

16

A prior consistent statement is not admissible if it is introduced in the absence of impeachment. *See United States v. Hedgepath*, 418 F.3d 411, 422 (4th Cir. 2005) (prior consistent statements of a witness are, as a general proposition, inadmissible as substantive evidence); *see also United States v. Weil*, 561 F.2d 1109, 1111 (4th Cir. 1977) (explaining corroborative testimony of prior consistent statements of a witness unless testimony sought to be bolstered as previously been impeached).

Wallace cannot introduce his own statements through the testimony of another witness or through improper reference during opening statements or closing arguments. Defendant is, of course, at liberty to provide a statement from the witness stand, where he would be subject to cross-examination.

> v.  Statements made by co-conspirators.

The government may elicit statements made by Wallace's co-conspirators during its case in chief. Co-conspirator statements are admissible under Fed. R. Evid. 801(d)(2)(E) if the government can show three things by a preponderance of the evidence; (1) a conspiracy existed, (2) the conspiracy included both the declarants and the defendant against whom the statement is offered, and (3) the statements were made during the course of, and in furtherance of, the conspiracy. *United States v. Mathis*, 932 F.3d 242, 254 (4th Cir. 2019); *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

17

The government will be able to meet the three requirements set forth above in the instant case. The evidence will show that a conspiracy existed between Wallace and his named co-defendant, Leslie Stout, to traffic women by force, fraud, and coercion. All statements the government intends to introduce will be statements made in furtherance of that conspiracy. Consequently, statements made by Leslie Stout to Wallace are admissible under Fed. R. Evid. 801(d)(2)(E).

   i. <u>Statements by an unavailable witness pursuant to Fed. R. Evid. 804(a)(4).</u>

In the course of trial preparation, the government recently learned that one of the victims, Victim 3 in Count Four of the Indictment, is hospitalized and thus unavailable as defined in Fed. R. Evid 804(a)(4). Rule 804(b)(1) established an exception to the hearsay rule of former testimony. *United States v. Salerno*, 505 U.S. 317, 321 (1992). This exception provides: "the following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former Testimony.—Testimony given as a witness at another hearing….if the party against whom the testimony is now offered…had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *Id.*, *see* Fed. R. Evid. 804(b)(1)(A) & (B).

18

In *Salerno*, the Court considered whether grand jury testimony was admissible when a witness invoked their Fifth Amendment right and became "unavailable" at trial. *Id*. The Court ultimately held that a party may not introduce former testimony without showing a "similar motive." *Id*. at 324-325.

Here, the proffered evidence is the audio recorded testimony from a state court probable cause hearing where Victim 3 testified under oath[6]. During that hearing, Wallace was present and represented by counsel. Wallace's counsel had an opportunity to cross-examine Victim 3 and, indeed, did cross-examine her vigorously. Thus, unlike at federal grand jury where the testimony is not subject to any cross-examination, here Wallace was present, able to face his accuser, and have his counsel cross-examine said accuser. In state court, Wallace was charged with three counts of human trafficking and one count of kidnapping. Consequently, the underlying issues at the probable cause hearing were identical to the issue at trial here. *See Salerno*, 505 U.S. at 326 (Blackmun concurring); *see also United States v. Miles*, 290 F.3d 1341, 1353 (11th Cir. 2002) (holding prior trial testimony of a now unavailable witness

---

[6] The government will submit the recording as a separate manual filing for the court's review, labeled Government's Exhibit 1. Should the court grant the government's motion to exclude certain evidence under 412, Government's Exhibit 1 would need to be redacted.

was admissible in second trial since defendant had similar interest in attacking the testimony at the first trial as he did at the second.)

In this case, the strict requirements set forth in Fed. R. Evid. 804(b)(1) (A) & (B) are satisfied. *See* Fed. R. Evid. 804(b)(1). The testimony is therefore admissible and does not violate the Confrontation Clause.  This Court should admit the audio recorded testimony and cross examination of Victim 3 if she remains unavailable at the time of trial.

> j.  <u>Business records provided by CashApp and others are self-authenticating under Federal Rule of Evidence 902(11) and should be admitted under the hearsay exception.</u>

Federal Rule of Evidence 902(11) provides that an "original or a copy of a domestic record that meets the requirements of Rule 803(6)(A—C), as shown by a certification of the custodian or another qualified person" is self-authenticating, provided that the proponent gives an adverse party reasonable written notice of the intent to offer the record — and makes the record and certification available for inspection — so that the party has a fair opportunity to challenge it.

Here, the United States may seek to introduce business records certifications from CashApp that illustrate payments made from the victims to an account controlled by the defendant. The United States will make each of

20

the certifications available to defense counsel for inspection in advance of trial.[7]

    k. <u>Evidence of the victims' prior prostitution or sexual behavior should be excluded because none of the limited exceptions to Fed. R. Evid 412 apply.</u>

Under Rule 412, evidence that a victim "engaged in other sexual behavior" or evidence offered to prove a victim's "sexual predisposition" is "not admissible in any civil or criminal proceeding involving sexual misconduct," except under very limited circumstances.[8] *See* Fed. R. Evid. 412(a). Rule 412(b)(1)(A) provides for the admission of specific instances of sexual behavior by the victim in a criminal case to prove "that a person other than the accused was the source of semen, injury or other physical evidence." Because engaging in sex with a victim is not an element of a sex trafficking charge under Title 18, United States Code, Section1591(a) or conspiracy to commit sex trafficking under §1594(c), this exception does not apply in this case and the defendant cannot rely on it to admit evidence.

---

[7] The Court of Appeals for the Fourth Circuit has ruled that business record certifications are not testimonial and thus do not violate the Confrontation Clause. *See United States v. Hassan*, 742 F.3d 104, 133 n.25 (4th Cir. 2014).

[8] A defendant's failure to file a timely motion under Rule 412 is itself grounds to deny the admission of any such evidence at trial. See Fed. R. Evid. 412(c) (requiring written motion filed 14 days prior to trial).

Case 1:22-cr-00328-CCE   Document 56   Filed 06/21/23   Page 21 of 28

Rule 412(b)(1)(B) allows evidence of specific instances of the victim's sexual behavior with the defendant "offered by the accused to prove consent," or offered by the prosecution. This exception is also inapplicable because the sexual relationship between the defendant and a victim is not an element of §1591(a)(1) or §1594(c). Further, courts categorically reject the argument that victims' previous engagement in commercial sex suggests that the defendant did not coerce the victims because voluntary involvement in commercial sex generally is not relevant to a specific sex trafficking charge. *See United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (rejecting defendant's argument that victim's prior engagement in commercial sex was admissible under Rule 412(b)(1)(B) to demonstrate that the victims were not coerced by him because victims' prior commercial sex did not relate to the defendant and was irrelevant to sex trafficking charges); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (finding that the victim's history of commercial sex was irrelevant to whether the defendant coerced her); *United States v. Valenzuela*, 495 F. App'x 817, 820 (9th Cir. 2012) (unpublished) (finding that under Rule 412, "evidence of prior prostitution is irrelevant to whether the victims consented to working as prostitutes").

Rule 412(b)(1)(C) allows for the admission of "evidence the exclusion of which would violate the constitutional rights of the defendant." Rule 412 "aims

22

to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Fed. R. Evid. 412, commentary to the 1994 amendments. Courts have widely found that exclusion of evidence of victim's sexual history does not violate defendant's constitutional rights because it is "either entirely irrelevant or of slight probative value in comparison to its prejudicial effect." *United States v. Parks*, 849 F. App'x 400, 405 (4th Cir. 2021) (unpublished) (affirming district court's decision to exclude evidence about sex work before or after the defendant's alleged sex trafficking); *United States v. Rhymes*, 827 F. App'x 266, 270 (4th Cir. 2020) (unpublished) (holding evidence of the victim's sexual history was not constitutionally mandates in order for defendant to challenge her credibility); *Cephus*, 684 F.3d at 708 (7th Cir. 2012) (barring evidence of victim's prior history of prostitution under Rule 412 because it was irrelevant to the defendant's charges "[a]nd even if [the victim] knew going in, from her prior [prostitution] experience, that [the defendant] probably would beat her, it was still a crime for him to do so"); *United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her,

23

and took the money she made from prostitution in order to cause her to engage in commercial sex."); *United States v. Gemma*, 818 F.3d 23, 34 (1st Cir. 2016) (same).

Under the Sixth Amendment, a defendant does have the right to confront witnesses and impeach their credibility through cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). Even so, only probative evidence is admissible under the Confrontation Clause. *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009). Evidence that is more prejudicial than probative may be excluded without violating a defendant's Sixth Amendment right. *Id.* A victim's sexual history is more prejudicial than probative and is thus properly barred under Rule 412 without violating a defendant's Sixth Amendment right. *See Gemma*, 818 F.3d at 34 (finding that evidence of victim's history of commercial sex was "of such slight probative value in comparison to its prejudicial effect that [it did] not violate [the defendant's] constitutional rights"); *United States v. Jackson*, 806 F. App'x 533, 535 (9th Cir. 2020) (unpublished) (affirming district court's decision to bar evidence of victim's commercial sex history under Rule 412 because it was more prejudicial than probative); *United States v. Smith*, 662 F. App'x 132, 135 (3d Cir. 2016) (unpublished) (affirming district court's decision to bar cross-examination of victim's sexual history because it was prejudicial and did not violate the defendant's Sixth Amendment right).

24

Furthermore, courts have held that a victim's sexual history cannot speak to the victim's credibility and does not have impeachment value. *See United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015) ("The very purpose of [Rule 412] is to preclude defendants from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed."); *Elbert*, 561 F.3d at 777 (finding that victim's history of commercial sex did not speak to her credibility as a witness and had no impeachment value because the victim's prior engagement in prostitution was not relevant to the defendant's sex trafficking charges).

To be sure, courts have allowed the introduction of a victim's sexual history when it relates to the time period charged in the Indictment and the victim's relationship with the defendant. *See Parks*, 849 F. App'x at 405 (4th Cir. 2021) (unpublished) (affirming district court's decision to introduce evidence related to victims' commercial sex activity while in contact with the defendant, but not commercial sex activity before or after meeting the defendant); *United States v. Brown*, 810 F. App'x 105, 108 (3d Cir. 2020) (unpublished) (allowing defendant to cross-examine victims about prostitution activity during the time period of the indictment, but not before or after the indictment).

Finally, Rule 412 sets forth a specific procedure for determining the admissibility of such evidence. First, the party seeking to offer the evidence must

file a written notice "at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered." Fed. R. Evid. 412(c)(1). Before admitting the evidence, the court must conduct an in-camera hearing and afford the victim and the parties the right to attend and be heard. Fed. R. Evid. 412(c)(2). The pleadings and the record of the hearing must be sealed. *Id.*

To date, the defense has not filed any such motion providing notice to the Court, parties, and the testifying victims of its intent to introduce any evidence to prove that the victims allegedly engaged in other sexual behavior unrelated to the charged crimes, or of any alleged sexual predisposition on the part of the victims. As noted above, the government nevertheless anticipates, that the defense may intend to elicit through these testifying victims that they engaged in sexual behavior that is unrelated to the charged crimes. Nothing in Rule 412 states that the government cannot seek to exclude the evidence prior to receiving this formal notice. Nor does the Rule preclude the Court from excluding the evidence at this time under Rule 403. Accordingly, the government respectfully asks this Court to consider its motion at this time and issue a ruling barring the defense from making reference to any such evidence while the victims are on the stand.

l. <u>The parties have not agreed to any stipulations.</u>

The parties have not reached agreement on any stipulations.  The parties will inform the Court prior to the trial if they anticipate entering into any stipulations.

## III.  <u>CONCLUSION</u>

The government respectfully submits that it has identified no other significant issues which may arise at trial.  If other issues are raised during trial, the government requests leave of court to supplement this brief in order to respond.

This the 21st day of June, 2023.

Respectfully submitted,

SANDRA J. HAIRSTON
UNITED STATES ATTORNEY

/S/ NICOLE R. DUPRÉ
Assistant United States Attorney
NCSB No. 41214
United States Attorney's Office
Middle District of North Carolina
251 N. Main Street, Suite 726
Winston-Salem, NC  27101

/S TANNER KROEGER
Assistant United States Attorney
NYSB No. 5297015

27

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Carlyle Sherill, Esq.

Respectfully submitted,

/S/ NICOLE R. DUPRÉ
Assistant United States Attorney
NCSB No. 41214
United States Attorney's Office
Middle District of North Carolina
251 N. Main Street, Suite 726
Winston-Salem, NC  27101